UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARNITA SMITH,

       Plaintiff,                                  Hon. Richard Alan Enslen

v.                                                  Case No. 1:04-CV-451

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 47 years of age at the time of the ALJ's decision. (Tr. 14). She possesses a ninth grade education and worked previously as a housekeeper. (Tr. 14, 49, 61-66).

Plaintiff applied for benefits on July 8, 2002, alleging that she had been disabled since April 29, 2002, due to arthritis, stomach ulcers, gastritis, uterine fibroids, manic depression, and high blood pressure. (Tr. 37-39, 48). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 23-36). On January 29, 2004, Plaintiff appeared before ALJ B. Lloyd Blair, with testimony being offered by Plaintiff and vocational expert, Heather Benton. (Tr. 197-217). In a written decision dated March 25, 2004, the ALJ determined that Plaintiff was not disabled. (Tr. 13-20). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 4-6). Plaintiff initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## MEDICAL HISTORY

Treatment notes dated June 29, 2001, reveal that Plaintiff's "anxiety, depression, and intermittent explosive disorder were well controlled with low dose Elavil and she decided to discontinue it recently and was convicted of felony assault for which she served 90 days." (Tr. 100). As a result, Plaintiff's employment was terminated. *Id.*

3

On October 16, 2001, Plaintiff participated in a CT scan of her abdomen, the results of which were "negative." (Tr. 106).

On April 25, 2002, Plaintiff was examined by Dr. William Weatherhead. (Tr. 118-19). Plaintiff reported that she was experiencing chronic epigastric pain which radiated through to her back. (Tr. 118). Plaintiff also reported that she had recently experienced reflux symptoms which were controlled with medication. Plaintiff exhibited no evidence of liver disease, lymphadenopathy, or thyromegaly. An examination of Plaintiff's heart, lungs, and extremities was unremarkable. An examination of Plaintiff's abdomen revealed diffuse tenderness and mild distension. The doctor concluded that Plaintiff's pain was the result of chronic alcohol-induced pancreatitis. *Id.* Plaintiff's medication was modified and she was scheduled to participate in a CT scan of her abdomen and pelvis. (Tr. 119).

On May 24, 2002, Plaintiff participated in a CT scan of her abdomen and pelvis, the results of which revealed a "mass in the pelvis likely representing a fibroid uterus." (Tr. 126-27).

On June 20, 2002, Plaintiff was examined by Dr. Weatherhead. (Tr. 121). Plaintiff reported that her epigastric discomfort was "much improved" with her new medication. She further noted, however, that she was experiencing "alternating diarrhea and constipation as well as crampy abdominal pain which is relieved with passage of bowel movements." An examination of Plaintiff's abdomen revealed "mild" tenderness to palpation in the epigastric region without guarding, rebound, or rigidity. Plaintiff exhibited no evidence of hepatosplenomegaly, bruits, or ascites. The doctor concluded that Plaintiff was not suffering from pancreatitis, but was instead experiencing symptoms "indicative of irritable bowel syndrome." Plaintiff was instructed to begin "a low-fat, high-fiber diet supplemented with Citrucel tablets twice daily." *Id.*

4

Treatment notes dated June 28, 2002, reveal that Plaintiff "has not been using Effexor as prescribed and has had poor compliance [with] anti-depressant therapy." (Tr. 130).

On August 23, 2002, Plaintiff participated in a consultive examination conducted by Steve Geiger, Ph.D. (Tr. 161-65). When asked "what would make it difficult or impossible to work," Plaintiff responded that "I was on SSI six years ago, they gave it to me for alcoholism and then took it away." (Tr. 161). Plaintiff further stated that she experiences "a lot of stomach pain," is "very depressed," fears "being around people," and "can't concentrate." Plaintiff reported that she suffered panic attacks for the past three months, during which she experienced "shortness of breath, dizziness, heart palpitations, chest pain, shaking, sweating, choking, nausea, hot and cold flashes, fear that she will die and/or go crazy." *Id.* Plaintiff was "uncertain" how frequently she experienced such panic attacks. (Tr. 161-62).

Plaintiff reported that she was not involved "in any form of mental health treatment" and was presently working part-time "cleaning buildings." (Tr. 162). Plaintiff also reported that she lived alone and "could do her own shopping, laundry, housekeeping, meal preparation and financial arrangements." (Tr. 163). Plaintiff appeared depressed and angry, but a mental status examination was otherwise unremarkable. (Tr. 163-64). Plaintiff was diagnosed with: (1) major depression, recurrent, severe without psychotic features, (2) alcohol dependence, in full-sustained remission, and (3) panic disorder with agoraphobia. (Tr. 165). Her GAF score was rated as 53. *Id.*

On October 13, 2002, psychiatrist, Dr. Brian Krause completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 168-81). Determining that Plaintiff suffered from a depressive disorder and an anxiety disorder, the doctor concluded that Plaintiff satisfied the Part A criteria for Sections 12.04 (Affective Disorders) and 12.06 (Anxiety-Related

5

Disorders) of the Listing of Impairments. (Tr. 169-77). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for these particular impairments. (Tr. 178). Specifically, the doctor concluded that Plaintiff suffered mild restrictions in the activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and never experienced episodes of decompensation. *Id.*

X-rays of Plaintiff's right shoulder, taken June 28, 2003, revealed degenerative changes with no evidence of fracture, dislocation, or destructive bone lesion. (Tr. 193). The x-ray also revealed "normal" bone mineralization. *Id.* Plaintiff also participated in an MRI examination of her right shoulder, the results of which revealed degenerative changes with no evidence of rotator cuff tear, joint effusion, abnormal bursal fluid, or osseous abnormality. (Tr. 191).

At the administrative hearing Plaintiff testified that she was presently working part-time. (Tr. 202, 204). Plaintiff testified, however, that she was unable to work on a full-time basis due to stomach problems, pancreatic pain, a pinched nerve in her right arm, "real bad" arthritis, high blood pressure, and an inability to sleep. (Tr. 204-05). Plaintiff reported that she suffered from "constant" pain which rated 8/9 on a scale of 1-10. (Tr. 205, 210). Plaintiff reported that she was also suffering from depression and feelings of suicide, but acknowledged that she was not presently participating in any mental health treatment. (Tr. 205-06). Plaintiff also reported that she vacuums, washes her laundry, and shops. (Tr. 207-08).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

### B. The ALJ's Decision

The ALJ found that Plaintiff suffers from the following severe impairments: irritable bowel syndrome, history of fibroid uterus, history of high blood pressure, and mild degenerative changes of the right shoulder. (Tr. 16). The ALJ determined that these impairments, neither alone nor in combination, satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* Finding that Plaintiff was

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

capable of performing her past relevant work, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act. (Tr. 18).

### 1. The ALJ's Decision is Supported by Substantial Evidence

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work activities subject to the following limitations: (1) she can frequently lift/carry up to 20 pounds, (2) she cannot use ladders, ropes, or scaffolds, (3) she can only occasionally stoop, crouch, kneel, crawl, or climb ramps/stairs, and (4) she cannot work in an environment with concentrated exposure to hazards, poor ventilation, extreme heat, extreme cold, wetness, humidity, vibration, fumes, odors, dusts, or gases. (Tr. 18). After reviewing the relevant medical evidence, the undersigned concludes that the ALJ's determination as to Plaintiff's RFC is

supported by substantial evidence. The vocational expert testified that given her RFC, Plaintiff would be able to perform her previous work as a housekeeper. (Tr. 215-16). Accordingly, the ALJ determined that Plaintiff was not disabled as defined by the Act.

### a. The ALJ Properly Evaluated Plaintiff's Impairments

The ALJ concluded that Plaintiff did not suffer from a severe mental impairment. Plaintiff asserts that the ALJ erred by failing "to take into account not only the exertional limitations, but the mental impairments contributing to [her] disability."

At step two of the sequential disability analysis articulated above, the ALJ must determine whether the claimant suffers from a severe impairment. The Sixth Circuit has held that where the ALJ finds the presence of a severe impairment at step two and proceeds to continue through the remaining steps of the analysis, the alleged failure to identify as severe some other impairment does not constitute reversible error so long as the ALJ considered the entire medical record in rendering his decision. *See Maziarz v. Sec'y of Health and Human Services*, 837 F.2d 240, 244 (6th Cir. 1987); *Ortiz-Rosado v. Comm'r of Soc. Sec.*, 2001 WL 700835 at *1 (6th Cir., June 12, 2001).

Here, the ALJ determined that Plaintiff suffered from severe impairments at step two of the sequential analysis and continued with the remaining steps thereof, noting that he gave "careful consideration" to "the entire record." (Tr. 20). This sufficiently indicates that the ALJ properly considered the combined effect of Plaintiff's various impairments. *See Loy v. Sec'y of Health and Human Services*, 901 F.2d 1306, 1310 (6th Cir. 1990) (citing *Gooch v. Sec'y of Health and Human Services*, 833 F.2d 589, 591-92 (6th Cir. 1987)).

As the ALJ observed, Plaintiff acknowledged that she was not receiving any treatment for her alleged mental impairment. When Plaintiff had in the past been prescribed medication to treat her alleged mental impairment, her compliance was "poor." Furthermore, treaters and examiners have consistently observed only moderate symptoms of mental impairment and have never imposed on Plaintiff any work-preclusive limitations. In sum, substantial evidence supports the ALJ's conclusion that Plaintiff does not suffer from a severe mental impairment.

However, even were the Court to conclude otherwise, such does not call into question the substantiality of the evidence supporting the ALJ's decision. *See Heston v. Commissioner of Social Security*, 245 F.3d 528, 535-36 (6th Cir. 2001) (recognizing that remand to correct an error committed by the ALJ unnecessary where such error was harmless); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("no principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"); *Berryhill v. Shalala*, 1993 WL 361792 at *7 (6th Cir., Sep. 16, 1993) ("the court will remand the case to the agency for further consideration only if 'the court is in substantial doubt whether the administrative agency would have made the same ultimate finding with the erroneous finding removed from the picture...'").[2]

---

[2] The Court is aware of the Sixth Circuit's recent decision in *Wilson v. Commissioner of Social Security*, 378 F.3d 541 (6th Cir. 2004), in which the court rejected the application of the "harmless error" doctrine as applied to an error committed by an ALJ. The present circumstance, however, is easily distinguishable. In *Wilson*, the court found improper the application of the "harmless error" doctrine only as to errors which constituted the "denial of a mandatory procedural protection." *Id.* at 544-46. The alleged error committed by the ALJ in this instance is not procedural in nature and as the *Wilson* court recognized does not come within the scope of its decision. *Id.* at 547-48.

10

        b.       The ALJ Properly Discounted Plaintiff's Subjective Allegations

The ALJ concluded that Plaintiff's subjective allegations of pain and limitation were "somewhat overstated and inconsistent with the available evidence." (Tr. 17). Plaintiff asserts that the ALJ improperly discounted her subjective allegations. She further asserts that if properly evaluated, her subjective allegations establish that she is, in fact, disabled.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the

11

alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony") (citations omitted). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

It is not disputed that Plaintiff suffers from severe impairments. However, as the ALJ properly concluded, Plaintiff's subjective allegations of disabling pain and limitation are not supported by objective medical evidence, but are instead "overstated" and lack evidentiary support. Moreover, while Plaintiff's impairments are severe, the objective medical evidence does not support the assertion that her impairments are "of such a severity that [thay] can reasonably be expected to produce the alleged disabling pain." This conclusion is further supported by Plaintiff's reported activities and the fact that none of Plaintiff's care providers have imposed on her limitations which are inconsistent with the ALJ's RFC determination. In sum, there exists substantial evidence to support the ALJ's credibility determination.

## **CONCLUSION**

As articulated herein, the Court concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,


Date: May 24, 2005                                     /s/ Ellen S. Carmody
                                                       ELLEN S. CARMODY
                                                       United States Magistrate Judge